**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **T.C., a minor, by and through his guardian, mother, and next friend, LESA CASH,** | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civ. Act. No. 2:18-cv-936-TFM-SMD<br>) |
| **LIFESOUTH COMMUNITY BLOOD CENTERS, INC.,** | )<br>)<br>) |
| Defendant. | )<br>) |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's motion to dismiss Plaintiff's Complaint (Doc. 6, filed November 26, 2018), to which Plaintiff responded (Doc. 11, filed December 17, 2018) and Defendant replied (Doc. 13, filed January 2, 2019). Defendant's motion to dismiss is fully submitted and ripe for review. After a careful review of the pleadings, motion, response, reply, and the relevant law, the Court **DENIES** Defendant's motion to dismiss for the reasons articulated below. Plaintiff also has filed a *Joint Consent Motion to Set Hearing for Defendant LifeSouth Community Blood Centers, Inc.'s Motion to Dismiss* on behalf of both parties, asking the Court to set a date for a hearing on the motion to dismiss (Doc. 16, filed 9/10/19). The Court finds that a hearing is unnecessary for a determination on the motion. And, in light of this ruling, the Court **DENIES** the motion as moot.

### I. PARTIES AND JURISDICTION

Plaintiff T.C. ("Plaintiff" or "T.C."), a minor, brings this lawsuit by and through Lesa Cash, his guardian, mother, and next friend, asserting state-law claims under this Court's diversity

jurisdiction pursuant to 28 U.S.C. § 1332.[1]  Diversity jurisdiction requires (1) that the suit is between citizens of different states and (2) that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a).  Where a party is a corporation, it is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."  28 U.S.C. § 1332(c)(1).  Plaintiff and Lesa Cash are residents and citizens of Elmore County, Alabama.  The defendant, LifeSouth Community Blood Centers, Inc. ("Defendant" or "LifeSouth"), is a Florida corporation with its principal place of business in Gainesville.[2]  Thus, the parties are diverse.

Plaintiff seeks from the suit unspecified damages and does not state whether the damages he seeks from his claims exceed the jurisdictional minimum for a federal diversity suit.  However, even where the complaint does not claim a specific damages amount, the district court may determine that the $75,000 threshold has been met if is "facially apparent from the pleading itself that the amount in controversy exceeds the jurisdictional minimum." *Roe v. Michelin North Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010).  The Eleventh Circuit "permits district courts to make reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings in making such determinations."  *Id*. at 1061-62 (internal quotations and citation omitted).  In other words, "a district court need not 'suspend reality or shelve common sense in

---

[1] Plaintiff does not specifically state 28 U.S.C. § 1332 in his complaint.  However, he brings state law claims, and a review of his complaint shows it is apparent that it is pursuant to diversity jurisdiction.

[2] Plaintiff's Complaint states that LifeSouth is a "foreign corporation with its principal place of business" in Gainesville, Fla."  Doc. 1 at 3.  The Court takes judicial notice of the Florida Department of State's Division of Corporations website, which lists LifeSouth Community Blood Centers, Inc., as a Florida corporation.  *See* Florida Department of State, Division of Corporations, dos.myflorida.com/sunbiz/ (follow "Search Records" hyperlink, "Name" hyperlink, then search Entry Name field for LifeSouth Community Blood Centers, Inc., then follow hyperlink for "LifeSouth Community Blood Centers, Inc.").

determining whether the face of the complaint … establishes the jurisdictional amount.'" *Id*. at 1062 (quoting *Pretka v Kolter City Plaza II, Inc.*, 608 F.3d 744, 770 (11th Cir. 2010)); *see also Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001) ("When the complaint does not claim a specific amount of damages, removal from state court is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement.").

Here, Plaintiff's complaint alleges that, as a result of the incidents underlying this lawsuit, T.C. was involved in a serious car accident in which T.C.'s vehicle hit a tree; T.C. was airlifted to a hospital and placed under the care of a trauma team; and T.C. suffered a long list of injuries—including extensive skull base fractures, traumatic brain injury, hearing loss, and multiple lacerations, fractures, and dislocations—that were life-threatening and resulted in permanent life changes. *See* Doc. 1 ¶¶ 31-39. Based on the pleading, the Court finds it is facially apparent that resulting damages from the incident alleged easily could exceed $75,000. Thus, the jurisdictional requirement has been met.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case center on a blood drive conducted November 1, 2016, by Defendant on the campus of Marbury High School in Deatsville, Ala., where T.C., was then a 16-year-old student. Doc. 1 ¶¶ 1, 12-13. According to the complaint, LifeSouth employees or agents permitted T.C. to donate blood despite being underage and having no parental consent. *Id*. ¶¶ 2-3, 14-15. The complaint alleges that LifeSouth employees or agents, in contravention of the company's own standards and procedures, failed to verify T.C.'s age; failed to have T.C. fill out the 55-question donor history questionnaire and asked him only whether he had tattoos or allergies or was sexually active; failed specifically to ask him whether he had eaten in the last three hours, which he had not; performed an extensive double red blood cell donation to which T.C. had not agreed; caused

T.C. to miss lunch due to the lengthiness of the more extensive donation process; and failed to provide T.C. adequate nutrition following the donation. *Id.* ¶¶ 3-6, 15-20, 23-29. The complaint alleges that, as a result of LifeSouth's actions, T.C. passed out while driving his car three hours later, hitting a tree and sustaining life-threatening and, in some cases permanent, injuries. *Id.* ¶¶ 30-39.

Plaintiff filed his complaint in this Court on October 31, 2018, asserting the following claims against LifeSouth: negligence (Count 1); wantonness (Count 2); negligent hiring, training, and supervision (Count 3); and respondeat superior (Count 4). From each claim, Plaintiff seeks unspecified damages plus interest and costs. *Id.* ¶¶ 40-61.

### III.  STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *Gilmore v. Day*, 125 F. Supp. 2d 468, 471 (M.D. Ala. 2000). To survive a motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). In considering a defendant's motion to dismiss, the "court must view the complaint in the light most favorable to the plaintiff and accept all the plaintiff's well-pleaded facts as true." *Am. United Life Ins. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007) (*citing St. Joseph's Hosp. Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 954 (11th Cir. 1986)). In other words, in deciding a 12(b)(6) motion to dismiss, the Court will accept the petitioner's allegations as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed. 2d 59 (1984); *Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 706 (11th Cir. 1998); *Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir. 1998) (citing *Lopez v. First Union Nat'l Bank of Fla.*, 129 F.3d 1186, 1189 (11th Cir. 1997)). However, "[c]onclusory allegations, unwarranted deductions of

facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004) (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)); *see also Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) (conclusory allegations and unwarranted deductions of fact are not admitted as true).

Thus, a complaint should be dismissed "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558, 127 S. Ct. at 1966. Further, "this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. (citations omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555, 127 S. Ct. at 1964-65 (citations omitted). Factual allegations must be enough to raise a right to relief above the speculative level. *Id*. Thus, it does not require a heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. *Id*. at 570, 127 S. Ct. at 1974. It is not enough that the pleadings merely "le[ave] open the possibility that the plaintiff might later establish some set of undisclosed facts to support recovery." *Id.* at 561, 127 S. Ct. at 1968 (internal quotation and alteration omitted). Consequently, the threshold for a complaint to survive a motion to dismiss is "exceedingly low." *Ancata v. Prison Health Services, Inc*., 769 F.2d 700, 703 (11th Cir. 1985).

### IV. DISCUSSION AND ANALYSIS

In its motion to dismiss, Defendant argues that all of Plaintiff's claims should be dismissed because (1) LifeSouth qualifies as an "other health care provider" under the Alabama Medical

Liability Act ("AMLA"), Ala. Code § 6-5-540 *et seq.*, and thus, Plaintiff's claims are subject to the requirements of the Act, and (2) Plaintiff failed to properly state his claims under AMLA. Doc. 6. Defendant argues that Alabama case law supports that a blood collector and processor qualifies as an "other healthcare provider" under AMLA, and that claims related to the collection and processing of blood are subject to AMLA, citing *Wilson v. Am. Red Cross.*, 600 So. 2d 216, 217 (Ala. 1992). Defendant also specifically asserts that Count 3 of Plaintiff's complaint—alleging that LifeSouth breached the standard of care in hiring, training, and supervising its employees—is governed by AMLA, citing *Ex parte Ridgeview Health Care Ctr., Inc.*, 786 So. 2d 1112, 1116 (Ala. 2000).

Defendant avers that Plaintiff's claims all are based on LifeSouth's collection of blood and blood products, which is a highly technical medical service requiring trained medical personnel and, therefore, beyond the common knowledge of a jury. Defendant argues that, because the claims alleged here involve technical medical issues, Plaintiff is required to establish through expert testimony that the actions at issue in this case failed to meet the applicable standard of care. For example, Defendant asserts that Plaintiff cannot argue LifeSouth was negligent without providing "similarly situated expert testimony that defines the appropriate standard of care for the performance of such services." *Id*. at 5. Defendant attaches to its motion a chart identifying portions of Plaintiff's complaint that refer to LifeSouth's blood donation/collection activities as a "service." Doc. 6-1.

In his response, Plaintiff argues that (1) his claims are not subject to AMLA because Defendant is not an "other health care provider" under the statute and (2) even if Defendant qualifies as an "other healthcare provider" under AMLA, dismissal is not warranted. Doc. 11. Plaintiff asserts, first, that the motion should be denied at the outset because Defendant makes only

a blanket assertion that Plaintiff fails to properly state a claim against LifeSouth but offers no specifics to indicate what elements may be missing from the complaint. Plaintiff also asserts that Defendant's failure to identify specific grounds makes it difficult to craft a response.

Plaintiff avers that *Wilson* is distinguishable from this case because, in *Wilson*, evidence was presented that the defendant was under contract with University of Alabama Hospital to supply blood to the hospital, and thus, the defendant was employed by the hospital. Plaintiff asserts that the court in *Wilson* determined that the defendant was a health care provider not by the nature of the services it provided to the hospital, but due to the employer/employee relationship between the defendant and the hospital that had provided relevant healthcare services to the plaintiff. Plaintiff asserts that, by contrast, LifeSouth was not under contract with any other entity that delivered health care services to Plaintiff, and the incidents underlying this lawsuit occurred at a high school blood drive, where Plaintiff was not seeking medical attention, but rather, making a blood donation.

In support of his argument that Defendant is not an "other health care provider" under AMLA, Plaintiff cites *Anderson v. Ala. Reference Labs*, 778 So. 2d 806, 810 (Ala. 2000), in which the Alabama Supreme Court held that a medical laboratory qualified as an "other health care provider" under AMLA because its testing of a specimen was integral to the physician's delivery of health care services to the patient. In this case, Plaintiff argues, T.C. was not a patient; LifeSouth was not a physician; T.C. did not need medical services from a medical expert; and LifeSouth's collection of blood cannot be considered a "delivery of health care services" under AMLA.

Plaintiff also cites *Ex parte Partners in Care*, 986 So. 2d 1145 (Ala. 2007), a case in which the Alabama Supreme Court determined that a company that produced a defective drug used by a physician was not an "other health care provider" because the physician was not using the

company's product to deliver health care services to patients. Plaintiff asserts that, in *Ex parte Partners in Care*, the court found that there must be a link between an entity seeking protection under AMLA and a physician's treatment of a patient via a product supplied by a defendant. Plaintiff argues that such is not the case here.

Finally, Plaintiff argues that, even if the Court finds Defendant is an "other healthcare provider" under AMLA, Plaintiff's complaint meets the specifications for pleadings set out in Ala. Code § 6-5-551 because it contains every known detail and fact surrounding the incidents at issue.

In reply, Defendant argues, for the first time, that AMLA applies to the claims at issue here because LifeSouth is a "hospital" for purposes of AMLA. Specifically, LifeSouth argues that AMLA explicitly relies on the definition of hospital found in Ala. Code §§ 22-21-20(1) and 22-21-21, which address the licensing of hospitals and other health care institutions in the state and include in the definition of hospitals "independent clinical laboratories." ALA. CODE §§ 6-5-481, 6-5-542, 22-21-20(1) and 22-21-21. LifeSouth asserts that it was licensed during the relevant period by the Alabama State Board of Health as an independent clinical laboratory pursuant to Ala. Admin. Code § 420-5-8 and, as such, is included in the definition of "hospital" relevant to AMLA. Defendant also argues that *Wilson* controls the criteria for defining a blood bank as an "other health care provider" under AMLA, and LifeSouth meets the criteria set out.

Defendant avers that, contrary to Plaintiff's argument, the fact that Plaintiff was a blood donor while the plaintiff in *Wilson* was a blood recipient is not dispositive. Defendant also asserts that, in *Wilson*, the court relied on evidence that (1) the Red Cross was under contract with a hospital to supply blood to the hospital at the time of the incident, and (2) the activities of the Red Cross were highly technical and required the supervision of and participation by a physician and other trained technical personnel to conclude that the Red Cross was employed by the hospital and

directly involved with the delivery of health care services.

Defendant argues that, similarly, its blood collections are highly technical in nature and operate with medical oversight as required by state and federal law. In support of those assertions, Defendants states that LifeSouth, as a nonprofit blood bank, is licensed and regulated by the Food and Drug Administration ("FDA") and accredited by the American Association of Blood Banks ("AABB"), which establishes standards for blood-banking practices. Defendant asserts that its staff includes physicians, nurses, laboratory technicians, trained phlebotomists, and medical directors who ensure compliance with FDA and AABB standards and regulations. Defendant asserts that, under FDA standards, blood must be collected under the supervision of a physician, who may delegate responsibilities to trained personnel. Defendant avers that regulations also require that medical histories and physical examinations provided to donors be conducted by a physician or a person acting under the direction of a physician.

LifeSouth further asserts that it is accredited under the Centers for Medicare and Medicaid Services to accept human specimens as a clinical laboratory for the purposes of performing laboratory examinations and procedures in the state of Alabama, a qualification that requires, *inter alia*, a laboratory director who is a board-certified doctor of medicine or osteopathy. LifeSouth asserts that, like the defendant in *Wilson*, it supplies blood to local hospitals by contract in accordance with FDA regulations, and thus, it satisfies the "employment" requirement. LifeSouth avers that other courts follow the Alabama court's determination in *Wilson* that blood banks are medical providers for purposes of state medical malpractice statutes—including, in relevant part, courts in Georgia and Florida. LifeSouth states that the blood it collects and processes is transported to other states when there is a need for it, and thus, finding LifeSouth is not a health care provider would create conflict between the various state laws and federal regulations.

LifeSouth attaches to its reply an affidavit by Christopher Lough, M.D., medical director of LifeSouth in November 2016, the time of the events underlying this action.

As an initial matter, LifeSouth moves to dismiss under Fed. R. Civ. P. 12(b). Although LifeSouth does not state more specifically which provision of Rule 12(b) it invokes here, it states in the motion that the complaint should be dismissed because Plaintiff "has failed to properly state a claim." Thus, it is clear the motion is brought under Rule 12(b)(6), failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). Generally, the Court must convert a motion to dismiss into a summary judgment motion if it considers materials outside the complaint, and it may consider an extrinsic document only if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged. *SFM Holdings, Ltd., v. Banc of Am. Sec., LLC*, 600 F. 3d 1334, 1337 (11th Cir. 2010). Here, Defendant attaches to his reply an extrinsic document—specifically, an affidavit from a former medical director attesting to LifeSouth's operations, staff, accreditations, regulation, and other information.[3] This information is not central to Plaintiff's claim, nor can the Court determine whether its authenticity is or is not challenged. Thus, the Court may not consider the affidavit for purposes of the pending motion to dismiss and excludes it from consideration.

The issue before the Court is whether the claims brought in this case are subject to AMLA and, if so, whether Plaintiff's complaint comports with AMLA's stringent pleading requirement. AMLA applies to "any action for injury, damages, or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care, whether resulting from acts

---

[3] LifeSouth also attaches to the initial motion to dismiss an exhibit listing Plaintiff's references in the complaint to LifeSouth's activities at the high school taking blood donations as a "service." Because this list merely reiterates portions of the complaint, it may be considered central to the complaint, though it is not relevant, in any case, to the Court's analysis.

or omissions in providing health care, or the hiring, training, supervision, retention, or termination of care givers." ALA. CODE § 6-5-551. The parties do not dispute that the types of claims raised here fall within this purview. Rather, the parties disagree as to whether LifeSouth qualifies as a health care provider for purposes of the Act. AMLA defines a "health care provider" as "[a] medical practitioner, dental practitioner, medical institution, physician, dentist, hospital, or other health care provider as those terms are defined in Section 6-5-481." ALA. CODE § 6-5-542(1). LifeSouth urges in its motion to dismiss that it meets the definition of an "other health care provider," which is defined in AMLA as "[a]ny professional corporation or any person employed by physicians, dentists, or hospitals who are directly involved in the delivery of health care services." ALA. CODE § 6-5-481(8).

In *Wilson*, the Alabama Supreme Court addressed for the first time whether the collecting and supplying of blood is a health care service. 600 So. 2d at 218. The court determined that the Red Cross—who was sued after the plaintiff, during surgery at a hospital, received blood supplied by the Red Cross and contracted hepatitis B—was an "other health care provider," thus subjecting his claims for negligence and wantonness to the provisions of AMLA. In reaching its determination, the court noted record evidence that the Red Cross was under contract with the hospital to supply it blood, and the Red Cross' activities were highly technical and required supervision and participation by a physician and other trained technical personnel. *Id*. The court found, "[b]ased on this evidence," that the Red Cross was employed by the hospital and directly involved in the delivery of health care services. *Id*. The court also noted that it agreed with the South Carolina Supreme Court that "the collection and processing of blood for transfusion is a medical service and that the Red Cross, as a blood collector and processor, should be treated as a professional," citing *Doe v. Am. Red Cross Blood. Svcs.*, 377 S.E. 2d 323, 326 (1989). *Id*.

In a case cited by Plaintiff, *Ex parte Partners in Care, Inc.*, the Alabama Supreme Court notes that its interpretation of "other health care provider" under AMLA "has not always been uniform." 986 So. 2d 1145, 1148 (Ala. 2007). Specifically, the court noted that it has sometimes determined that AMLA required the "other health care provider" itself to be directly involved in the delivery of health care services and, at other times, has considered the direct delivery of health care services to apply only to the physician, dentist, or hospital employing the "other health care provider." *Id*. The court determined that, although an employment relationship with a hospital would bring a corporation within the definition of an "other health care provider," an employment relationship *per se* was not necessarily required. The court nevertheless determined that, "at a minimum, a physician, dentist, or hospital must have made *use* of that corporation … in the physician's, or dentist's, or hospital's delivery of health-care services to the plaintiff-patient." *Id*. (emphasis in original).

As Plaintiff argues in his response, the Alabama court in *Wilson* appears to rely, at least in part, on evidence that the Red Cross was working under contract to, or employed by, the hospital, which delivered health care services to the plaintiff. And as *Ex parte Partners In Care, Inc.*, clarifies, even without an employment relationship, Defendant must show, at a minimum, that a physician, dentist, or hospital must have made use of LifeSouth in its delivery of health-care services to the relevant plaintiff or patient. Regardless of whether the case law applies the delivery of health-care services provision to the corporation or the hospital, the statute appears to require a relationship between the corporation and a physician, dentist, or hospital. *See Ex parte Partners in Care, Inc.*, 986 So. 2d at 1149 ("[I]t is not a person's or corporation's occupation or type of business that determines whether AMLA applies, it is whether that person or corporation was used by a physician, dentist, or hospital in delivering health-care services to a patient."). There is not

yet evidence at this early stage of these proceedings that this requirement is satisfied.

Although LifeSouth asserts in its reply that it meets the employment requirement of an "other health care provider" because it contracts with local hospitals to supply blood, there is no evidence before the Court to support LifeSouth's position, it is not clear from the face of the complaint that LifeSouth is an "other health care provider," and Plaintiff contests LifeSouth's assertion that it meets AMLA's definition. LifeSouth also asserts in its reply that it meets the definition of a "hospital" under AMLA. However, even if the Court were to entertain an argument raised for the first time in LifeSouth's reply, there is, again, insufficient evidence before the Court to make a determination.

The Court notes that it is quite possible, based on the information provided thus far, that Plaintiff's claims may fall within the purview of AMLA. However, the determination would be premature at this point. Determining the applicability of AMLA in this case requires a factual inquiry beyond the scope of a 12(b)(6) motion to dismiss.

The Court also notes that, even if it were determined that Plaintiff's claims are subject to the provisions of AMLA, the motion to dismiss would fail, because LifeSouth has not demonstrated that the complaint is insufficient under AMLA's pleading requirements. AMLA requires that a plaintiff include in a complaint a "detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts." ALA. CODE § 6-5-551. As Plaintiff argues, LifeSouth makes a blanket assertion that Plaintiff has failed to properly state his claim that appears to be based primarily on (1) the fact that Plaintiff's complaint does not specifically invoke AMLA, and (2) AMLA's requirement that plaintiffs prove their claim with expert testimony.

As to the first, LifeSouth does not offer support for its assertion that the complaint must specifically invoke AMLA, nor does LifeSouth offer any argument as to why Plaintiff's allegations in the complaint are not sufficiently specific. Plaintiff notes the time, place, and circumstances of the incident at issue, the alleged acts and omissions for which Plaintiff seeks to hold LifeSouth liable, and the alleged resulting injury. The Court agrees with Plaintiff that the complaint complies with AMLA's heightened requirement that he allege specific acts and omissions that could render Defendant liable. *See* ALA. CODE § 6-5-551.

As to the second, LifeSouth is correct that the ALMA provision to which it cites, Ala. Code § 6-5-548, requires that Plaintiff prove "by substantial evidence that the health care provider failed to exercise such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice ordinarily have and exercise in a like case." ALA. CODE § 6-5-548(a). However, this provision of AMLA speaks to Plaintiff's ultimate burden of proof, not to the sufficiency of Plaintiff's complaint. Thus, the argument fails.

## V. CONCLUSION

At this nascent phase of the case, Plaintiff's claims survive a Rule 12(b)(6) motion to dismiss. This opinion, however, does not render a final determination on the AMLA issue, which may be presented as evidence develops through discovery. For the reasons already stated, Defendant's motion to dismiss is **DENIED** and the parties' joint motion for a hearing on the motion is likewise **DENIED AS MOOT**.

**DONE and ORDERED** this 20th day of September 2019.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE